600 So.2d 751 (1992)
STATE of Louisiana, Appellee,
v.
Michael L. COMBS, Appellant.
No. 23732-KA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 1992.
*752 Hargrove, Guyton, Ramey & Barlow by Paul A. Strickland, for appellant.
Richard Ieyoub, Atty. Gen., Jim Bullers, Dist. Atty., J. Spencer Hayes, Asst. Dist. Atty., for appellee.
Before LINDSAY, HIGHTOWER and STEWART, JJ.
HIGHTOWER, Judge.
A jury found defendant, Michael Combs, guilty as charged of simple arson, LSA-R.S. 14:52. Later, after he admitted the allegations of an habitual offender bill, the trial court imposed a seventeen-year term of hard labor imprisonment without parole, probation or suspension of sentence.
Defendant now appeals, reserving five assignments of error. For reasons hereinafter expressed, we affirm the conviction and, as amended, the sentence.

BACKGROUND
Investigation into the destruction by fire of an unoccupied house (commonly known as the guest house), located adjacent to Brooks' Lakeview Inn in Bossier Parish, led authorities to suspect arson. Witnesses to the conflagration reported observing defendant walking near the structure shortly before the incident; some noticed him carrying a container with a rag extending from its mouth. On June 24, 1990, the day of the blaze, police officials detained Combs for questioning. Additional information soon substantiated the earlier suspicions, and a bill of information followed, charging him with simple arson.

DISCUSSION

Sufficiency of the Evidence
In the first assignment of error, emanating from the denial of a motion for post-verdict acquittal, defendant challenges the sufficiency of the evidence to support the conviction. He maintains that the adjudication, based upon circumstantial evidence, cannot be sustained in that the state (1) while asserting the sole theory that an accelerant precipitated the destruction, failed to introduce sufficient evidence of that proposition; (2) did not negate the possibility of accidental incineration; (3) did not present sufficient evidence that defendant started the blaze; and (4) failed to negate the reasonable hypothesis that another person set the fire.
The criteria for evaluating sufficiency of evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that all the elements of the crime had been proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984); State v. Chism, 436 So.2d 464 (La.1983); State v. Lard, 568 So.2d 629 (La.App. 2d Cir.1990). That standard, initially enunciated in Jackson, and now legislatively embodied within LSA-C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La. 1983); State v. Willis, 446 So.2d 795 (La. App. 2d Cir.1984).
For circumstantial evidence to convict, upon assuming every fact to be proved that the evidence tends to prove, it must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438. However, that rule does not establish a stricter standard of review than the rational juror's reasonable doubt formula, but, instead, provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. State v. Wright, 445 So.2d 1198 (La.1984); State v. Sutton, *753 436 So.2d 471 (La.1983); State v. Chism, supra; State v. Christopher, 561 So.2d 935 (La.App. 2d Cir.1990), writ denied, 567 So.2d 1124 (La.1990). Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond reasonable doubt. State v. Wright, supra; State v. Christopher, supra.
Furthermore, it is the function of the judge or jury to assess credibility and resolve conflicting testimony. State v. Bonnett, 524 So.2d 932 (La.App. 2d Cir. 1988), writ denied, 532 So.2d 148 (La.1988). Where the trier of fact has made a rational determination, an appellate court should not disturb it. State v. Mussall, 523 So.2d 1305 (La.1988). Indeed, in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the fact-trier, is sufficient support for the requisite factual conclusion. State v. Reaves, 569 So.2d 650 (La.App. 2d Cir.1990), writ denied, 576 So.2d 25 (La.1991); State v. Shepherd, 566 So.2d 1127 (La.App. 2d Cir.1990); State v. Emerick, 499 So.2d 195 (La.App. 2d Cir. 1986).
A charge of simple arson, defined by LSA-R.S. 14:52, requires the state to prove the intentional damaging, by any explosive substance, or by setting fire, to property of another without the owner's consent. Only general criminal intent need be established. LSA-R.S. 14:10(2), 14:11; State v. Simmons, 443 So.2d 512 (La.1983).
Three witnesses, Sandra Cook, Marvin Henson, and William Jones, testified that shortly before discovery of the blaze they observed a man walking near the guest house. They each additionally noticed that the person carried a container with a rag partially exposed at its top or mouth. In fact, as Jones approached, the individual attempted to conceal the object. Further, through a rearview mirror, this witness watched the man begin traversing the roadway, moving toward the building in question. Both Henson and Jones described the man as having long hair and a heavy beard, and wearing a cap. Henson additionally remembered a right arm tattoo.[1] Although neither Cook nor Henson could make an in-court identification, Jones recognized defendant as the person with the container, notwithstanding a notable change in appearance: shorter hair, clean-shaven face, and an indicated weight loss. Indeed, Jones knew the individual as "Mike," a musician who previously played at Brooks' Lakeview Inn.
Elwood Shepherd and the victim of the arson, Bobby Brooks, likewise placed defendant near the scene immediately before and soon after the blaze. Also, while seated in the Lakeview Inn adjacent to the guest house, they heard a loud breaking sound or "racket" shortly before the fire erupted. Five or ten minutes after the noise, someone reported smoke emanating from the neighboring building and, within a brief time, flames consumed the entire structure.
Raymond Parker, a Bossier Police Department retiree who had moved from the guest house only three days before the incident, soon came to the location. He testified that, within five to seven minutes after his arrival, he observed Combs traveling past the ongoing conflagration, seated in the back of a pickup truck and consistently looking away from the scene, despite the driver's urgings, "[L]ook at the fire, look at the fire." Shepherd and Brooks likewise noted defendant passing the burning house, and apparently turning his face away from the assembled crowd.
Brooks further related a "name calling" incident, occurring about two weeks before the fire and resulting in the banishment from Lakeview Inn of defendant, a frequent performer with a musical group at that establishment. Parker, a member of the band, corroborated the heated exchange that brought about defendant's departure from the group. Additionally, the state called Combs's former girlfriend, Marsha Woodall. She remembered that on *754 June 8, 1990, after the abovementioned altercation, defendant appeared angered by the owner's actions and threatened "that he was going to get the K.K.K. to burn Bobby Brooks' (sic) down." [Defendant is white and the victim is black.][2]
Brooks additionally testified that the electricity had been discontinued at his guest house a few days before the blaze, and that the propane for the building had been completely depleted.
James Alexander, an investigator with the state fire marshal's office, appeared as an expert on the causes and origins of fires. Visiting the structural remains on the morning after the blaze, Alexander determined that the fire began in the storage area, where the greatest damage occurred. Considering witnesses' recollection of black smoke at the inception (indicating the use of a flammable liquid), the rapidity at which the flames consumed the building, and the lack of a specific burn pattern in the storage area, he concluded that the blaze originated through use of an incendiary device. In his opinion, a bottle filled with a flammable substance, and containing a rag for ignition, would have provided sufficient accelerant to cause the resulting damage.
Plainly, when the evidence is viewed in the light most favorable to the prosecution, a rational juror could find defendant guilty beyond a reasonable doubt. Furthermore, notwithstanding attempts to establish both a different means of ignition and another individual as the perpetrator, the record amply negates any reasonable hypothesis of innocence. See and compare State v. Broussard, 535 So.2d 532 (La.App. 3d Cir. 1988), writ denied, 541 So.2d 893 (La.1989) (aggravated arson case based upon circumstantial evidence); State v. Jones, 480 So.2d 437 (La.App. 4th Cir.1985) (defendant charged with aggravated arson but found guilty of simple arson); State v. Porter, 454 So.2d 220 (La.App. 3d Cir.1984), writ denied, 457 So.2d 17 (La.1984), cert. denied, 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985) (concerning arson with intent to defraud and attempted arson). Thus, the first assignment is without merit.
By his second assignment, defendant complains of the denial of a motion for new trial that asserted the verdict to be contrary to the law and the evidence. See LSA-C.Cr.P. Art. 851(1). In response to such a motion, only the weight of the evidence may be reviewed by the trial judge. State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). See also Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Moreover, the refusal to grant such a motion is not subject to appellate review. LSA-C.Cr.P. Art. 858; State v. Korman, supra. In any event, defendant's argument still actually centers around the question of sufficiency of evidence, an issue that properly should be posed by a motion for post-verdict judgment of acquittal. See LSA-C.Cr.P. Art. 821. Here, however, that procedural device proved unsuccessful in connection with assignment number one, as shown above. Clearly, then, this second complaint also lacks merit.

Denial of Motion for New Trial
In his third and fourth assignments of error, defendant finds fault with the denial of a motion for new trial, urged under LSA-C.Cr.P. Art. 851(2). First of all, he essentially reiterates his trial objection of relevancy directed at certain testimony by Officer James Hilburn. Specifically, while being transported to the Bossier Parish Sheriff's Office, defendant made an unsolicited comment asserting his membership in the K.K.K. and stating that he would not let black people take what belonged to him. The trial court, concluding that the statement indicated motive, overruled the defense objection.
*755 Regarding the question of relevancy, LSA-C.E. Arts. 401 and 403 state:
Art. 401. Definition of "Relevant evidence"
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Art. 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
Under the definition provided by LSA-C.E. Art. 401, the statement related by the police officer is logically relevant, tending to establish why defendant would commit the offense. We may narrow the issue, then, to whether the probative value of the evidenceits persuasive forceis substantially outweighed by unfair prejudice. As used in LSA-C.E. Art. 403, unfair prejudice means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." State v. Jackson, 584 So.2d 266 (La.App. 1st Cir.1991), writ denied, 585 So.2d 577 (La.1991) (citing G. Pugh, R. Force, G. Rault, Jr., and K. Triche, Handbook on Louisiana Evidence Law, Authors' Notes, No. (4), p. 234 (1991)).
Here, of course, defendant did not particularize his remarks by naming his black victim individually. Nevertheless, when coupled with later evidence of the pre-fire altercation between Combs and the club owner, and testimony by Marsha Woodall, the statement clearly served to enhance the jury's understanding of how and why the crime transpired. Furthermore, beyond simply labeling the remarks as "highly prejudicial," defendant has not shown in what manner the probative worth is substantially outweighed by unfair prejudice. Such is the burden of an accused. See State v. Jackson, supra.
Simply stated, under all these circumstances, the trial judge correctly found defendant's utterances relevant and substantially more probative than prejudicial.
Next, defendant contends that his motion for new trial should have been granted in that the prosecution improperly conducted the redirect examination of Marsha Woodall. Of course, only those matters covered on cross-examination, or others in the court's discretion, may be explored on redirect. LSA-C.E. Art. 611(D). Cf. State v. Burrell, 561 So.2d 692 (La. 1990); State v. Larson, 579 So.2d 1050 (La.App. 3d Cir.1991), writ denied, 588 So.2d 1110 (La.1991). See also G. Rault, Jr., An Overview of the New Louisiana Code of EvidenceIts Imperfections and Uncertainties, 49 La.L.Rev. 697, 720-721 (1989), indicating that Paragraph D of LSA-C.E. Art. 611 "codifies familiar limits on the scope of redirect examination," and citing repealed LSA-R.S. 15:281. Here, the questions and responses objected to by defendant are, at worst, redundant. Given the broad discretion granted the trial court, we find no error.
In his final complaint anent the denial of the new trial motion, defendant asserts that the prosecution's closing argument exerted undue influence. However, the contention is unimpressive. Of course, arguments in criminal cases are restricted to the evidence, the conclusions drawn therefrom, and the applicable law. LSA-C.Cr.P. Art. 774. Yet the district judge allowed wide latitude both to the state and defense during summation, and no substantial prejudice to the defendant has been shown.
Assignments three and four are, therefore, without merit.

Sentencing
Finally, defendant requests credit for time served and additionally maintains that his sentence, enhanced by an habitual offender bill, improperly denies him the opportunity for parole. Agreeing in both respects, we amend.
LSA-C.Cr.P. Art. 880 requires the lower court to grant credit for time served, and an appellate court may correct an illegal sentence, LSA-C.Cr.P. Art. 882; *756 State v. Fraser, 484 So.2d 122 (La.1986). The record indicates the district judge, although according credit for time served on two prior felonies, failed to mention the period that defendant spent in custody awaiting trial on the present charge. Hence, the sentence and minutes will be amended to reflect any time in actual custody, as a result of this offense, which has not been calculated against another sentence.
Furthermore, the trial judge directed that defendant's imprisonment be served "without benefit of probation, parole, or suspension of sentence." (Emphasis added). No statutory authority permitted the denial of the opportunity for parole. Subsection G of the Habitual Offender Law, LSA-R.S. 15:529.1, mandates that all sentences imposed under that statute be without benefit of probation or suspension; however, no other provision of that enactment sanctions the disallowance of parole eligibility for defendant, a second felony offender. See Acts 1987, No. 774; State v. Shepherd, supra, at 1131 n. 3. Accordingly, the sentence and minutes should also be appropriately amended in this respect.

CONCLUSION
For the foregoing reasons, we affirm the conviction and, after amendments as indicated, the sentence.
CONVICTION AFFIRMED; SENTENCE AMENDED AND AFFIRMED.
NOTES
[1] Leslie Combs, brother of the accused, acknowledged that defendant has a tattoo on his arm.
[2] Other testimony showed that defendant, while in route to the Bossier Parish Sheriff's office, made other comments concerning blacks, and additionally claimed membership in the K.K.K. The defense objected to the latter evidence as being irrelevant, but the trial court allowed admission after deciding the utterance reflected motive. For the reasons hereinafter stated, we deem that ruling correct. Moreover, even if we excised the statement from consideration, the conviction would still be clearly supported by a sufficient record.