612 So.2d 1040 (1993)
STATE of Louisiana, Appellee,
v.
Terry Wayne MAYS, Appellant.
No. 24468-KA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1993.
Rehearing Denied February 18, 1993.
*1042 John Lawrence and Richard E. Hiller, Indigent Defender Office, Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Hugo A. Holland, Jr. and Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for appellee.
Before LINDSAY, HIGHTOWER and BROWN, JJ.
LINDSAY, Judge.
The defendant, Terry Wayne Mays, was convicted of second degree murder, in violation of LSA-R.S. 14:30.1, and sentenced to life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. Under the same indictment, he was also convicted of armed robbery, in violation of LSA-R.S. 14:64, for which he was sentenced to 50 years at hard labor, also without benefit of parole, probation or suspension of sentence. The trial court ordered that the sentences be served concurrently. The defendant appeals, urging six assignments of error. For the reasons assigned below, we affirm the defendant's convictions and sentences.

FACTS
At about midnight on April 20, 1989, Keith Foster, the deceased in this case, asked Ervin Ford, a friend and fellow resident of Marshall, Texas, to accompany him to Shreveport, Louisiana. Although Ford testified that he was initially unaware of the purpose of their trip, he subsequently learned that Foster was looking for an individual known as "Big Boy," from whom he wished to purchase drugs. The two men drove to the Mooretown section of Shreveport in Foster's car.
At approximately one o'clock in the morning, Foster and Ford stopped near the intersection of Mayfield and Robert Streets. There they encountered the defendant and his two companions, Robert Grant and Wendell Leshay. Foster, who was driving, asked the men if they knew anyone called "Big Boy." The defendant and Grant stood next to the driver's window, talking to Foster. Leshay walked away from the other men and stood near the back of the car.
During their conversation, Grant tried to make Foster believe that he had drugs for sale. Suddenly, Grant reached inside the car, turned the motor off, and removed the ignition key. The defendant then raised a sawed-off shotgun and placed it to Foster's head. The defendant demanded money from Foster and Ford. Both men surrendered their money, and Foster gave them his wallet. The defendant then shot Foster in the left side of his neck, killing him.
After the shooting, the defendant, Grant, and Leshay ran from the scene. When they reached the end of the block, Grant asked the defendant why he shot Foster. The defendant denied shooting him. Leshay insisted that the defendant had indeed shot Foster. Shortly thereafter, the defendant and Leshay hid the shotgun in some bushes several blocks from the crime scene. However, after the defendant left, Leshay returned and moved the weapon to another hiding place.
Immediately after the shooting, Ford sought help, knocking on the doors of nearby houses. Although none of the residents responded, he flagged down a police car. Ford was able to give the police descriptions of the assailants. (In particular, Ford described the gunman as wearing unusual headgear, i.e., a cap with something underneath it, perhaps a second cap.)
A few hours later, the police received an anonymous tip that the defendant and a man known by the street name "Rah-Rah" had been involved in the shooting. The authorities were aware that Grant was known by this alias. When shown a photo line-up, Ford identified Grant as the man who had removed the car keys. (The police were unable to find a photo of the defendant to show to Ford at that time.)
The police located the defendant and Grant at approximately 10:30 a.m. on April 20, 1989. The defendant's clothing and two caps matched Ford's description of the gunman. At the time of their arrests, the two men were belligerent and acted as though *1043 they were intoxicated. Due to the defendant's state of intoxication, the police were unable to obtain a statement from him until the next day. When finally questioned, the defendant admitted being with Grant on the night in question, but denied any involvement in the shooting or the robbery. When Ford viewed a live line-up on April 21, 1989, he identified the defendant as the man who shot Foster.
During their investigation, the police received a tip naming Leshay as the third man involved in the incident. When he was initially contacted by the police, Leshay denied any knowledge of the robbery and the murder. However, when he was contacted again, he cooperated with the police and directed them to the location of the shotgun, which was successfully recovered.
The defendant and Grant were initially charged with first degree murder and armed robbery. The charge of first degree murder was subsequently reduced to second degree murder. On August 15, 1991, following a jury trial, the defendant was convicted of second degree murder and armed robbery.
Following the defendant's conviction, he and several other unrelated criminal defendants filed motions to quash their indictments on the basis that there was a historical absence of black grand jury foremen in Caddo Parish. The defendant asserted that the indictment against him was defective because discrimination existed at the time it was handed down. The cases were consolidated for a hearing in accordance with Johnson v. Puckett, 929 F.2d 1067 (5th Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 274, 116 L.Ed.2d 226 (1991).
Prior to the hearing, the movants sought to have the hearing on the motion to quash temporarily reassigned to a judge who had never impaneled a grand jury foreman, relying on the Criminal Rules of the First Judicial District Court. The motion was denied.
At the Puckett hearing, the movants presented testimony pertaining to the racial composition and population of Caddo Parish and the number of black grand jury foremen during the period from 1971 to 1991. On January 22, 1992, the trial court issued a written opinion in which it denied the motion to quash. The court found that the defendants had failed to establish a prima facie case of racial discrimination in the selection of grand jury foremen because they failed to prove the first two prongs of the three-prong test set forth in Castaneda v. Partida, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977).
On February 14, 1992, the trial court denied the defendant's motions for new trial and for post-judgment verdict of acquittal. At that time, the court sentenced the defendant to life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence, for the offense of second degree murder, and 50 years at hard labor, without benefit of parole, probation or suspension of sentence, for the offense of armed robbery. The court directed that the sentences be served concurrently.
The defendant appealed, asserting 11 assignments of error. However, the defendant failed to brief five of these assignments of error. Assignments of error which are not briefed are considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir. 1989), writ denied, 558 So.2d 1123 (La. 1990).
The six remaining assignments of error are as follows: (1) the trial court erred by denying the defendant's motion to temporarily reassign the Puckett hearing, refusing to accept a defense witness as an expert in the field of social science research, and by denying the defendant's motion to quash; (2) the court erred by not permitting defense counsel to cross-examine a state witness, Ervin Ford, about his prior conviction; (3) the court erred by permitting hearsay testimony from a state witness, Wendell Leshay, about statements made by Robert Grant, a codefendant whose case was severed from the instant trial; (4) the court erred by limiting defense counsel's cross-examination of Leshay regarding his prior criminal record and expectations of leniency; (5) the court *1044 erred by not granting defendant's motion for mistrial regarding post-Miranda silence; and (6) the court erred by not granting defendant's motion for new trial and motion for post-verdict judgment of acquittal.

RACIAL DISCRIMINATION IN SELECTION OF GRAND JURY FOREMEN
The defendant contends that the trial court erred in several respects as to his claim of racial discrimination in the selection of grand jury foremen in Caddo Parish. Specifically, he claims that the trial court erred in not accepting a defense witness as an expert in social science research. He also maintains that the trial court erred by denying his motion to temporarily reassign the consolidated Puckett hearing and by denying his motion to quash the indictment based upon the improper selection of grand jury foremen.

Expert Witness
The defendant argues that the trial court erred in refusing to qualify his expert witness, a professor of criminology, as an expert in social science research who could give expert testimony in the field of statistical analysis. The witness, Fred Hawley, was a LSUS professor of Criminal Justice, chairman of the LSUS department of social sciences and director of the department of social science research. His bachelor's and master's degrees were in applied anthropology and geography, while he received his Ph.D. in criminology.
The trial court has great discretion in deciding which witnesses are qualified as experts, and the breadth and scope of expert testimony. See LSA-C.E. Art. 702, Comment (d); Armstrong v. Lorino, 580 So.2d 528 (La.App. 4th Cir.1991), writ denied, 584 So.2d 1166 (La.1991). Although the witness testified that he had some training and experience in the field of statistical analysis, we fail to see how this would have presented meaningful assistance to the trial court in understanding the evidence presented on the motion to quash. The figures presented by the defense spoke for themselves without further explanation or manipulation. Consequently, we find that the trial court did not abuse its broad discretion when it refused to accept the witness as an expert qualified to testify about statistical analysis.

Motion to Temporarily Reassign Hearing and Motion to Quash
The defendant's complaints pertaining to the denials of the motion to reassign the hearing and the motion to quash were recently addressed by this court in State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir. 1992). The defendant in that case, Leonard Thomas, was one of the other defendants involved in the consolidated hearing.
We agree with the rationale in Thomas, supra. For the reasons expressed therein, we find that the trial court correctly refused to reassign the hearing or quash the defendant's indictment. This assignment of error has no merit.

PRIOR CONVICTION OF STATE'S WITNESS
The defendant contends that the trial court erred by not permitting defense counsel to cross-examine a state witness, Ervin Ford, about the details of a prior conviction. He argues that the trial court's ruling hindered his cross-examination to such a degree that it violated his constitutional right to confrontation.
On direct examination, Ford, the passenger in Keith Foster's car, stated that he had pled guilty to burglary on two occasions and received probation. On cross-examination, defense counsel again asked Ford if he had been convicted of burglary and what his sentence had been. The state objected on the basis that the question had already been asked and answered. Out of the jury's presence, the state argued that details of an offense are generally inadmissible under LSA-C.E. Art. 609.1. The court ruled that defense counsel could ask Ford about his criminal record again, but prohibited him from eliciting any details of *1045 the crime, pursuant to LSA-C.E. Art. 609.1.
LSA-C.E. Art. 609.1 provides, in pertinent part:
A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.

. . . . .
C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
(1) When the witness has denied the conviction, or denied recollection thereof;
(2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or
(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.
The defendant failed to show that details of Ford's burglary conviction fell into any of the three exceptions to LSA-C.E. Art. 609.1(C). Furthermore, we fail to see how the defendant's cross-examination was hindered where the trial court allowed the defense to ask Ford about his sentence again and to fully explore his probation revocation. (Apparently, Ford had only pled guilty to one burglary, but his probation was later revoked. He was thereafter paroled.)
This assignment of error is meritless.

EXCITED UTTERANCES EXCEPTION TO HEARSAY RULE
The defendant asserts that the trial court erred by permitting hearsay testimony from Wendell Leshay about statements made by Robert Grant, the codefendant whose trial was severed by the state.
During his direct examination, Leshay testified that immediately after the shooting, he, the defendant, and Grant ran down the street, away from the victim's car. When they reached the end of the block, Leshay and Grant stopped momentarily to wait for the defendant to catch up with them. At this point, about a minute after the shooting, Grant asked the defendant why he had shot Foster.
The defendant objected to this testimony because it was hearsay. However, the court admitted the statement under the excited utterance exception to the hearsay rule.
In pertinent part, LSA-C.E. Art. 803(2) provides:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness: ....
(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
The occurrence or event must be sufficiently startling to render an observer's normal reflective thought processes inoperative. Further, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. State v. Reaves, 569 So.2d 650 (La.App. 2d Cir. 1990), writ denied, 576 So.2d 25 (1991).
Although there are many factors in determining whether a declarant was under the stress of an exciting event, the time factor is probably the most important. The trial court must decide whether the time interval between the event and the statement was long enough to permit a subsidence of emotional upset and a restoration of reflective thought process. State v. Reaves, supra.
The testimony established that about one minute passed between the shooting and Grant's question to the defendant. Certainly, the shooting was a sufficiently startling event to render Grant's reflective thought processes inoperative. Therefore, we find that the trial court was correct in holding that Grant's statement was an excited utterance and, as such, within an exception to the hearsay rule. See and compare State v. Bean, 582 So.2d 947 (La.App. *1046 2d Cir.1991), writ denied, 586 So.2d 567 (La.1991).
This assignment of error is without merit.

WITNESS' EXPECTATIONS OF LENIENCY
The defendant maintains that the trial court erred by limiting defense counsel's cross-examination of Wendell Leshay regarding his prior criminal record and expectations of leniency. On direct examination, the state elicited testimony that several months previously Leshay had pled guilty to an unrelated simple robbery charge and received probation. Leshay also testified that no promises had been made in exchange for his testimony against the defendant. During his cross-examination of Leshay, defense counsel sought to inquire about other cases against Leshay which were dismissed and the witness' expectations of leniency. The state objected on the basis of relevancy and LSA-C.E. Art. 609.1(B). The trial court allowed the defense to ask only about convictions, not arrests, and any inducements or leniency he received as to them.
Out of the jury's presence, defense counsel asked Leshay if he had made any deals with the police in order to have a charge of armed robbery reduced to simple robbery (the charge mentioned during direct examination). Leshay denied any deals with the police and testified that he had nine alibi witnesses as to that crime. The assistant district attorney representing the state in the defendant's trial stated on the record that he had handled the robbery case against Leshay. He verified that Leshay had been allowed to plead to the lesser charge and receive probation because he had an alibi and the only eyewitness' identification of Leshay was "very tentative." The jury was then returned to the courtroom, and no more questions concerning Leshay's criminal record were asked.
The possibility that the prosecution may have leverage over a witness due to that witness' pending criminal charges is recognized as a valid area of cross-examination. State v. Brumfield, 546 So.2d 1241 (La.App. 1st Cir.1989), writ denied, 556 So.2d 54 (La.1990); State v. Smith, 591 So.2d 1219 (La.App. 4th Cir.1991), writ denied, 604 So.2d 995 (La.1992). Criminal charges are considered to be "pending" if the time limitations for institution of prosecution have not elapsed, although the charges have been disposed of. State v. Harrison, 484 So.2d 882 (La.App. 1st Cir. 1986), writ denied, 488 So.2d 688 (La. 1986); State v. Landry, 583 So.2d 911 (La.App. 1st Cir.1991).
LSA-C.E. Art. 609.1(B) provides that "[g]enerally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility ..." and that inquiries as to such matters as arrests, indictments, and acquittals are not allowed. However, the accused's right to cross-examine a state's witness as to pending charges to show possible bias and prejudice is acknowledged in the Author's Notes pertaining to this code article found in the Handbook on Louisiana Evidence Law, Pugh, Force, Rault, and Triche (1992). See Authors' Notes (2) and (6) to LSA-C.E. Art. 609.1, the latter of which cites State v. Brumfield, supra, as well as LSA-C.E. Art. 607(D) and its Authors' Comment (12). Also, see and compare Official Comment (d) to LSA-C.E. Art. 609, which applies to civil cases.
We find that the trial court erred in refusing to allow the defendant to question Leshay about any deals he might have made with the state as to his prior arrests in exchange for his testimony. Consequently, we must now consider whether this error requires reversal of the defendant's conviction or whether it is harmless error beyond a reasonable doubt.
In Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the United States Supreme Court concluded as follows:
Accordingly, we hold that the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontational Clause errors, is subject to Chapman harmless-error analysis. The correct inquiry is whether, assuming that the damaging *1047 potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. [Citations omitted.]
475 U.S. at 684, 106 S.Ct. at 1438.
See also Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Cage, 583 So.2d 1125 (La.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991).
The state sought to use Leshay's testimony to corroborate that of Foster's passenger, Ervin Ford. Ford testified that the gunman wore unusual headgear, perhaps two caps with two bills. When the defendant was arrested less than 10 hours after the murder, he was wearing two caps. Thereafter, Ford identified the defendant as the gunman in a live line-up held within 48 hours of Foster's death. He also positively identified the defendant at trial. Thus, the state had a strong case against the defendant even without Leshay's testimony. Furthermore, the testimony of Ms. Vater Lee, a witness who observed the incident from the window of her house, substantially corroborated Leshay's testimony about the shooting, including his nonparticipation.
The defense was permitted to engage in other extensive examination of Leshay. During cross-examination, the defense elicited testimony that Leshay was somewhat intoxicated that evening and that he had some difficulty recalling certain facts. He also admitted that he had lied the first time the police contacted him about the shooting, and that he had previously been "in trouble" with the police.
Furthermore, the police officers who investigated the case testified that Leshay was never charged in connection with the murder or robbery because of Ford's statements as to Leshay's nonparticipation in the offenses and his cooperation with the authorities.
Based on the foregoing, we find that the trial court's failure to allow the defendant to inquire into the witness' hopes or expectations of leniency was harmless beyond a reasonable doubt. An eyewitness, Ford, identified the defendant as the gunman, and the arresting officer corroborated Ford's description of the defendant's unusual headgear. Ford also positively identified Grant, the person with whom the defendant was arrested, as the other participant in the crime. The evidence of the defendant's guilt was overwhelming.[1]
Consequently, we find no reversible error.

MOTION FOR MISTRIAL
The defendant also argues that the trial court erred by not granting the defendant's motion for mistrial under LSA-C.Cr.P. Art. 775 after the state allegedly elicited testimony as to the defendant's post-Miranda silence.
*1048 During the state's direct examination of Corporal A.J. Price, a member of the homicide unit of the Shreveport Police Department, the following exchange took place:
Q. Now, did you actually read those rights off the card to Mr. Mays?
A. Yes, I did.
Q. Did he state to you that he understood the rights?
A. Yes.
Q. And was he willing to sign the card showing that he understood the rights?
A. No, sir. He refused to sign the card.
Q. Was he willing to make any statement at that time?
A. I did not take a statement from him that day. I didn't take a statement from him until the following day on the 21st.
Q. Why is that?
A. They were very
The defendant objected, and the jury was removed. Defense counsel sought a mistrial on the grounds that the state had made reference to the defendant having exercising his post-arrest right to remain silent. The trial court denied the motion. The state, in an effort to clarify the witness' statements, elicited testimony from Corporal Price, outside of the jury's presence, that no effort was made to obtain a statement from the defendant initially because he was confrontational and appeared to be under the influence of drugs or alcohol. He also testified that the defendant never invoked his Miranda rights. After the jury returned, the officer again testified that the defendant appeared to be intoxicated and that was the reason he was not questioned initially. Corporal Price also testified that he again read the defendant his rights after he sobered up. At that time, the defendant gave a statement in which he admitted being with Grant, but denied any knowledge of the offense.
A brief reference to post-Miranda silence does not mandate a mistrial or reversal where the trial as a whole was fairly conducted, the proof of guilt is strong, and the state made no use of the silence for impeachment. State v. Brown, 557 So.2d 1085 (La.App. 2d Cir.1990). See also State v. Smith, 336 So.2d 867 (La.1976).
The state was not exploiting the defendant's silence. Apparently, it sought only to show the defendant's condition at the time of his arrest and the voluntary nature of the defendant's subsequent statement to the police. Furthermore, our review demonstrates that the trial, as a whole, was fairly conducted and that the proof of the defendant's guilt was strong, as noted in our previous discussion of the evidence.
Thus, we find no error in the admission of the statement. However, if any error occurred, it was clearly harmless beyond a reasonable doubt. A mistrial was not warranted.
This assignment of error is meritless.

SUFFICIENCY OF EVIDENCE
In his final assignment of error, the defendant contends that the trial court erred by not granting his motion for new trial under LSA-C.Cr.P. Art. 851 or his motion for post-verdict judgment of acquittal under LSA-C.Cr.P. Art. 821. Specifically, the defendant uses this assignment of error to attack the credibility of the two witnesses who identified him as the gunman, i.e., Ervin Ford and Wendell Leshay. He contends that his convictions should be overturned because these witnesses were not credible.
The criteria for evaluating sufficiency of evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that all the elements of the crime had been proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Lard, 568 So.2d 629 (La. App. 2d Cir.1990); State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992). That standard initially enunciated in Jackson v. Virginia, supra, and now legislatively embodied within LSA-C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Combs, supra.
*1049 It is the function of the trier of fact to assess credibility, and where the trier of fact has made a rational determination, an appellate court should not disturb it. State v. Combs, supra.
The appellate court will accord great discretion to the jury's decision to accept or reject the testimony of a witness. State v. Tate, 593 So.2d 864 (La.App. 2d Cir.1992).
The sole issue raised by the defendant in this assignment of error is the credibility of Ford and Leshay. The jury observed the demeanor of these two witnesses and obviously found one or both of them to be worthy of belief. Examination of their testimony does not reveal any basis upon which to dispute this finding of fact. The evidence in the record, viewed in the light most favorable to the prosecution, clearly establishes the defendant's guilt beyond a reasonable doubt.
Consequently, this assignment of error has no merit.

CONCLUSION
The convictions and sentences of the defendant are affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before NORRIS, LINDSAY, HIGHTOWER, BROWN and WILLIAMS, JJ.
Rehearing denied.
NOTES
[1] The present case is distinguishable from State v. Smith, supra. In Smith, the trial court granted the state's motion in limine to prevent the defendants from cross-examining the state's witness as to charges pending against him, and, following the defendants' convictions, denied their motion for new trial. The appellate court found reversible error due to the state's failure to disclose an agreement it entered into with the witness in exchange for his testimony and ordered new trials for the defendants. In its denial of the state's writ application, the Louisiana Supreme Court found that the trial court erred in granting the state's motion in limine. It also found that the trial court's error was not harmless beyond a reasonable doubt because of the witness' importance to the state's case and the conflicting testimony he gave as the case moved from its pretrial stages to trial. In that case, the witness was the only person to testify that the defendants were the gunmen who killed the victim, while several other witnesses specifically testified that the defendants were not the men they saw running from the scene. Also, the witness changed his story substantially at several different court proceedings.