liBROWN, Judge.
A jury in a 10-to-2 vote convicted defendant, William Matthew Callahan, of attempted possession of marijuana with intent to distribute. Thereafter, Callahan was sentenced to two and one-half years at hard labor. He appeals, citing numerous errors in both his conviction and sentence. We affirm.
FACTS
In early 1991, the Bossier-Caddo Narcotics Task Force (“task force”) received information from a confidential informant identifying defendant as a prospective buyer for a large quantity of marijuana.[1] The task force decided to act on the information and a meeting was arranged with defendant, the C.I. and task force agents for April 11, 1991. *610 Defendant was to buy twelve pounds of marijuana for $10,800 from the agents. The parties met at the Waffle House restaurant on Airline Drive in Bossier City and then moved next door to the Best Western Motel where the task force had rented two rooms. The discussions were monitored and recorded through electronic surveillance.
At the motel, defendant became concerned because one of the undercover agents looked familiar. Although he stated that he came prepared to make the deal, defendant’s fear that the agent was a law officer caused him to offer to pay for the agent’s time in an apparent effort to abort the transaction. The discussion, however, continued. Defendant admitted to other drug purchases in the past, although “not many times.” During the ^discussion, defendant made it clear that he intended to buy twelve pounds of marijuana and brought the $10,800. Eventually, defendant wanted to talk privately with the C.I. outside in a van.
The C.I. and defendant went to the van where they stayed for approximately ten to fifteen minutes. The C.I. returned to the motel room and told the agents that defendant had the cash and was prepared to consummate the deal provided the parties moved to the WalMart parking lot in Shreveport. The agents were also told that defendant was armed with a nine-millimeter Uzi semi-automatic rifle. The agents agreed on the condition that defendant showed them the money. One agent went to the van and defendant showed him the money. Because defendant was armed and the agents lacked control over the WalMart parking lot, it was decided, for safety reasons, to arrest defendant rather than proceed to Shreveport. Defendant was arrested as he was leaving the motel parking lot in the van and was subsequently charged with attempted possession with intent to distribute marijuana. A search of the van resulted in the seizure of an Uzi semi-automatic nine millimeter rifle and a paper sack containing $10,800.
DISCUSSION

Errors Pertaining to Defendant’s Conviction

We first address the issue of sufficiency of the evidence. Pursuant to LSA-C.Cr.P. Art. 821, defendant timely moved for a post-verdict judgment of acquittal challenging the jury’s decision. He claims that no evidence of an overt act was presented.
 LSA-C.Cr.P. Art. 821 provides that a motion for post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App.2d Cir.1992), writ denied, 604 So.2d 973 (La.1992). Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, a rational juror could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App.2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992). The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Combs, supra.
Attempted possession of marijuana with intent to distribute is committed when a defendant, having formed the intent to possess the drug for the purpose of distribution, does an act for the purpose of and tending directly toward the accomplishing of his object. LSA-R.S. 40:966A(1) and 14:27(A). Mere preparation to commit a crime shall not be sufficient to constitute an attempt. LSA-R.S. 14:27(B). The overt act, however, need not be the ultimate step toward, or the last proximate or possible act in the consummation of the crime attempted. State v. Williams, 490 So.2d 255 (La.1986). In determining whether the action of a defendant is preparation or an attempt, the totality of the facts and circumstances presented must be evaluated. State v. Williams, supra.
LDefendant agreed to meet with a party whom he believed to be a drug dealer. The meeting was arranged for a specific time at a designated location. Prior to the meeting, defendant ascertained that the price for a *611 pound of marijuana was $900 and indicated that he wanted to purchase twelve pounds for $10,800. Defendant arrived at the agreed upon location and negotiated with two undercover agents for the purchase of precisely twelve pounds of marijuana for the agreed upon price. Defendant made it clear to the agents that he had come with the money. Defendant became apprehensive about the transaction because, as he stated, one of the “drug dealers” looked familiar. Defendant regained his composure and conferred privately with the confidential informant who was acting as defendant’s accomplice. Ultimately, defendant decided to consummate the deal, but at a different location. To convince the agent of his sincerity, defendant showed a paper bag filled with the necessary cash to complete the transaction. Defendant was arrested and the paper bag, which contained exactly $10,800, was recovered.
On appeal, defendant argues that his attendance at the meeting and possession of the cash are legal activities that constitute preparation. Defendant argues that he never offered money for drugs, never touched or received any drugs and refused to smoke a marijuana cigarette to check the merchandise. Thus, defendant argues that there was no overt act.
Defendant’s argument is without merit. The totality of the facts and circumstances in this case clearly support a finding that defendant committed an overt act toward the purchase of a large quantity of marijuana for | ^redistribution. Defendant attended a meeting arranged solely for a drug-transaction, possessed cash in the exact predetermined amount, negotiated with parties he believed to be drug dealers and agreed to consummate a drug purchase at a specified location despite being told that he could walk away from the deal at any time. These facts and circumstances, when viewed as a whole, are clearly acts moving directly towards the commission of a crime. Viewing the evidence in a light most favorable to the state, a rational juror could have found beyond a reasonable doubt that defendant committed overt acts sufficient to constitute an attempt to possess marijuana for distribution purposes.
Other errors pertaining to the conviction are without merit and are discussed in Appendix A.

Errors Pertaining to Defendant’s Sentence

Defendant filed a timely motion to reconsider his sentence in accordance with LSA-C.Cr.P. Art. 881.1; however, the trial judge found defendant’s arguments meritless. On appeal, defendant enumerates fourteen individual errors related to his sentence. In his brief, defendant notes that each of these errors is a component to his claim of excessive sentence. Without arguing each assigned error, defendant merely asserts the excessiveness of the sentence imposed. Accordingly, we will review the sentenced imposed with general reference to the errors alleged.
During sentencing, the trial court judge stated that he had reviewed defendant’s pre-sentence investigation report (“PSI”) and the Louisiana Sentencing Guidelines, which placed defendant in grid cell 5G. This | (¡classification is in the intermediate sanction zone and provides for a designated sentence range of 15-30 months. The judge then noted that while the PSI indicated that defendant was eligible for probation, it was not recommended because of the seriousness of this offense.
The judge agreed, finding that incarceration was needed because of the large amount of marijuana involved. During the sentencing colloquy, the judge also referred to other factors in defendant’s case which influenced his decision. These included possession of an Uzi at the time of the offense, demonstration of lack of remorse and admission to prior drug involvement.
Defendant argues that the trial court erroneously placed him in Sentencing Guideline grid cell 5G when the correct grid cell was the less serious classification of 6G. Defendant is wrong. Possession of marijuana with intent to distribute is a grid level 4 felony. La.S.G. § 401B. An attempt of this crime is placed one level below the completed offense, level 5. La.S.G. § 401B.
*612 The relevant statutory sentence is found in LSA-R.S. 14:27D(3), which states in pertinent part:
D. Whoever attempts to commit any crime shall be punished as follows:
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
The punishment for possession of marijuana with intent to distribute is imprisonment at hard labor for not less than five years nor more than thirty Lyears and payment of a fine not to exceed $50,000. LSA-R.S. 40:966B(2). Thus, the punishment for attempted possession of marijuana is imprisonment at hard labor for not less than two and one-half years and not more than fifteen years and a fine not to exceed $25,000. Defendant’s sentence was the minimum under the statutory range and was within the range suggested by the FSG — fifteen to thirty months.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Thompson, 25,583 (La.App.2d Cir. 01/19/94), 631 So.2d 555; State v. Madison, 535 So.2d 1024 (La.App.2d Cir.1988).
A trial court is not required to render a suspended sentence or probation on a first felony offense. The court may consider whatever factors and evidence it deems important in determining the best interest of the public and the defendant. State v. Jones, 601 So.2d 339 (La.App.2d Cir. 1992), writ denied, 605 So.2d 1129 (La.1992).
The trial court judge did not abuse his discretion in imposing sentence. Defendant’s sentence was the statutory minimum for the offense. The PSI recommended defendant not be given a probated sentence. The judge gave his reasons as to why he rejected probation. While defendant asserts that the judge’s decision was based in part on an inaccurate rumor implicating defendant in drug activity surveillance conducted by other law enforcement officials, the judge referred to no such incident during sentencing and gave sufficient reasons to justify the sentence imposed. [^Further, the trial court conducted a healing on defendant’s motion to reconsider sentence. Despite defendant’s argument to the contrary, the record clearly indicates that the trial judge considered all mitigating factors. Defendant’s arguments to support a claim of excessive sentence are meritless.

Errors Patent

An error patent review was conducted pursuant to LSA-C.Cr.P. Art. 920(2). No errors were noted.
CONCLUSION
In light of the foregoing, defendant’s sentence and conviction are affirmed.
AFFIRMED.

IiAPPENDIX “A”

Assignment of Error No. 1

Defendant asserts error in the denial of his pre-trial motion to quash. Defendant raised this motion on the grounds that he had not been timely brought to trial. On appeal, defendant merely mentions this error and thereafter abandons it, noting that the issue was indirectly ruled upon by this court in its previous denial of supervisory writs for review of the matter. In light of defendant’s abandonment of the error, we will not address this issue.

Assignments of Error No. 2 and No. 6

These assignments of error concern the written charges given by the trial judge to the jury. Defendant argues that the trial court erred in failing to provide him with a copy of written jury charges prior to reading them to the jury.
Prior to the swearing of the first witness, counsel for defendant requested that the court provide written instructions to the jury. When the prosecution and defense rested, the court entertained requests for special jury charges. Both sides were particularly *613 concerned about the instructions regarding the definition of attempt. The trial judge refused to use suggested definitions offered by the parties and stated that he would use instead the language of LSA-R.S. 14:27, the statutory definition of criminal attempt. The judge then stated that he would provide a written copy of the charges to the parties; however, the charges were read to the jury before copies were disseminated.
After the jury retired, defense counsel objected to the court’s failure to provide him with a copy of the instructions. On appeal, defendant asserts Rthat he was prejudiced by the court’s error. In essence, defendant argues that had he been provided with the charges, he would have discovered that the court’s instruction on attempt did not adequately address the distinction between mere preparation and an overt act.
LSA-C.Cr.P. Art. 801 addresses the issue of providing a copy of jury charges to the parties:
The court shall charge the jury after the presentation of all evidence and arguments. The court shall reduce its charge to writing if it is requested to do so by either a defendant or the state prior to the swearing of the first witness at the trial on the merits. The court’s written charge shall be read to the jury. The court shall deliver a copy thereof to the defendant and to the state prior to reading it to the jury. A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.
Counsel for defendant followed the procedure set forth in the first paragraph and should have been given a copy of the charges prior to their publication to the jury. However, we cannot say that the court’s failure to provide a copy of the written charges is reversible error.
The prejudice complained of stems from the court’s alleged inadequate instructions regarding the definition of attempt and defendant’s inability to address any shortcoming in the instruction. We find it relevant to note that immediately prior to charging the jury, the parties engaged in a discussion regarding the definition of attempt. Defendant offered an instruction which the trial judge declined to use. The court made clear its intention to use theUplain language of the relevant statute itself. Defense counsel participated in these discussions and failed to object to the language preferred by the court. As such, counsel cannot claim to be surprised by the content of the instructions.
We also note defense counsel’s untimely objection to the court’s failure to provide a copy of written jury charges. Defendant contends that his objection, lodged after the charges were read and the jury retired, was timely and cites State v. Mack, 403 So.2d 8 (La.1981), to support his contention. In State v. Mack, the supreme court noted that an objection to general jury charges is timely preserved so long as it is lodged at a time when the judge can cure the error. The court went on to note that a jury can be recalled for additional instructions even after it has retired to deliberate. Accordingly, an objection to general jury charges made after the jury retires is deemed timely. In the instant case, however, the specific error assigned is the failure to provide counsel with a copy of the charges prior to reading them to the jury. The time to object to this error is the moment when the reading of the charges commences. Counsel failed to object until it was too late to correct the error.
Defense counsel’s objection in this matter was not timely preserved and we find no prejudice in the trial court’s mistake. Accordingly, this assignment is without merit. See State v. Anderson, 440 So.2d 205 (La.App.3rd Cir.1983), writ denied, 444 So.2d 1241 (La.1984).
Defendant also asserts error in the trial court’s rejection of his special jury instruction defining and distinguishing mere preparation from an overt Uact sufficient to raise conduct to the level of an attempt. In an effort to define the relevant concepts, defen *614 dant’s instruction included the phrase “[i]n the case of Attempted Possession of Marijuana with Intent to Distribute, amassing funds, arranging meetings and transportation would be preparation and cannot therefore constitute attempt.”
LSA-C.Cr.P. Art. 807 provides that a requested special jury charge need not be given when it requires qualification, limitation or explanation; when it is not wholly pertinent and correct; or when it is included in the general charge. See also State v. Thomas, 609 So.2d 1078 (La.App.2d Cir.1992), writ denied, 617 So.2d 905 (La.1993); State v. Washington, 597 So.2d 1084 (La.App.2d Cir.1992); and State v. Christopher, 561 So.2d 935 (La.App.2d Cir.1990), writ denied, 567 So.2d 1124 (La.1990).
Instead of giving the requested charge, the trial court judge chose to follow the language of LSA-R.S. 14:27, the statute defining attempt. The statutory language adequately apprised the jury of what constitutes an attempt, including a statement that mere preparation was not sufficient to qualify as an attempt. Further, the charge instructed the jury that one must do or omit an act for the purpose of and tending directly toward the accomplishing of his object in order to be guilty of an attempt to commit the crime intended. Finally, the instruction given also indicated that an act beyond preparation is required. The proffered special charge is more extensive and actually offers an opinion. Specifically, it refers to certain conduct present in this case as not being sufficient to constitute an attempt. Such a determination should be made by the trier of fact. The statutory | slanguage was clear, concise and adequately addressed the distinction between “mere preparation” and an “overt act”. The trial court properly refused to charge the jury with the requested instruction.

Assignments of Error No. S and No. k

In these assignments, defendant argues that the trial court erred in its attempt to clarify the meaning of intent and provide an example. After the jury retired to deliberate, the foreman sent a note to the trial court judge requesting further instruction regarding the meaning of intent. When the jury returned to the courtroom, the judge made the following statement:
Intent is what it means — what we intend to do. When we intend to turn right or we intend to turn left, we don’t know what’s in our mind. You have to look at what somebody else does. If they turn right, you then can draw the logical conclusion that more than likely, that was their intent. But again, it’s a matter of fact that may be inferred from the circumstances. And I believe, gentlemen, with the juris prudence [sic] as it stands today, that’s as much of a definition as I can give.
After the jury retired for further deliberation, defendant objected to the trial court’s use of the phrase “more likely than not”. Defendant also requested that the court further clarify the meaning of specific intent. The judge then had the jury return to the courtroom and reread the original jury instruction pertaining to criminal intent.
On appeal, defendant contends that the above-quoted passage misled the jury in two respects. First, it instructed the jury that intent could be determined by a standard of “more than likely” as opposed to “beyond a reasonable doubt”. Second, the illustration as to inferences that could bej^drawn from one’s decision to turn left or right was an improper example for determining specific intent.
In State v. Daniels, 614 So.2d 97 (La.App.2d Cir.1993), writ denied, 619 So.2d 573 (La.1993), this court held that:
A jury charge must be considered as a whole, and particular expressions in a charge must be construed in context of the entire charge. A conviction will not be reversed on the ground of an erroneous charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial.
Id. at 113.
The contested instruction occurred when the trial court judge was attempting to further instruct the jury after it had retired to deliberate pursuant to LSA-C.Cr.P. Art. 808. The court’s previous instructions to the jury *615 emphatically stressed the reasonable doubt standard and explained that the state must prove all elements of the crime beyond such a reasonable doubt. The “more than likely” language was later used by the trial court judge in a very limited, specific manner. He never instructed the jury that the state’s burden of proof was less than proving each element beyond a reasonable doubt. When viewed in the context of the original jury charges, such an expression was not so prejudicial as to warrant reversal.
Likewise, the illustration regarding one’s decision to turn left or right, when viewed in the context of the remaining jury charges, does not warrant a reversal. The illustration was used by the trial court judge in an attempt to explain “intent” without reference to either specific or general intent. After defendant raised his objection, the judge brought the jury back into the ^courtroom and reread the original instruction defining both specific and general intent.
While the court’s attempt to clarify and provide an example of intent may have been less than accurate, the original instruction with which the jury was charged and subsequently recharged adequately explained the mental element of the crime. These assignments of error are without merit.

Assignments of Error No. 5 and No. 8

In these two assignments of error, defendant contends that the trial court erred in not allowing testimony by defense witnesses regarding defendant’s past acts to show that he did not have the specific intent to commit the charged crime or that his motives were such that his intent was not criminal. Defendant sought to present testimony that his wife had been raped by a drug dealer, that his brother’s military career was ruined by drug use and that he had aided in patrolling his neighborhood, capturing burglars, reporting drug dealers, raising funds for drug dogs and visiting drug rehabilitation patients.
During the testimony of defendant’s first witness, the state objected to questions about specific events in defendant’s personal history. The trial court removed the jury and arguments were held about this testimony. Defense counsel argued that pursuant to State v. Prieur, he should be permitted to disprove defendant’s criminal intent by describing events inconsistent with drug involvement. The judge disagreed, ruling that such evidence fell under LSA-C.E. Arts. 404 and 405, and thus, character evidence as to general reputation only was admissible. Throughout the |8testimony of defense witnesses, the trial court sustained the state’s objections to questions about specific events from defendant’s past.
Defendant argues that the trial court incorrectly relied upon LSA-C.E. Arts. 404 and 405. Instead, he contends that LSA-C.E. Art. 404(B) properly permits the admittance of the testimony at issue. Art. 404(B) provides:
(1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Defendant, however, has provided no authority for the proposition that this article is applicable to a situation where evidence of the good character of the defendant is sought to be admitted. LSA-C.E.Art. 404(A) discusses the admissibility of character evidence related to the accused:
Evidence of a person’s character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
(1) Character of accused. Evidence of a pertinent trait of his character, such as a moral quality, offered by an accused, or by the prosecution to rebut the character evidence; provided that such evidence shall be restricted to showing those moral qualities pertinent to the crime with which he is charged, and that character evidence cannot destroy conclusive evidence of guilt.
*616 Methods for proving the character of the accused are addressed in LSA-C.E. Art. 405(A):
| gExcept as provided in Article 412, in all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to general reputation only. On cross-examination of the character witness, inquiry is allowable into relevant specific instances of conduct.
Based upon the foregoing provisions, the trial court correctly ruled on the admission of the disputed testimony. The court permitted defense witnesses to testify as to defendant’s character based on his general reputation with respect to honesty and integrity, his reputation within the community, his reputation regarding support for law and order and his reputation regarding tolerance for the “drug community”. The court only disallowed testimony of specific instances of conduct. These assignments are without merit.

Assignment of Error No. 7

Defendant contends that the trial court erred in sustaining the state’s objections to cross-examination questions concerning the state’s motives for prosecuting defendant.
Deputy Weaver testified for the prosecution concerning the operation devised to arrest defendant. On cross-examination, defense counsel elicited testimony from Weaver wherein he stated that he was aware of seizure and forfeiture laws affecting money and property used in the trafficking of illegal drugs. Weaver also testified that the law enforcement agency making the arrest receives a portion of the seized assets and cash. In response to further questioning, Weaver stated that the chance to share in seized assets played a part in the decision to arrest defendant after verifying that he was in possession of a large volume of cash; however, Deputy Weaver made it clear |10that ending defendant’s criminal activities was the primary motive behind the arrest. At this point, defense counsel attempted to question Weaver about a meeting in which the taped conversation of defendant and undercover agents was replayed. Specifically, counsel sought to question Weaver about a comment he made during the playback of the tape that suggested that asset seizure and forfeiture was a motivation behind the arrest. The state objected, questioning the relevancy of statements made after the commencement of prosecution while the parties listened to a playback of the tape.
In arguments outside the presence of the jury, defense counsel argued that he was attempting to show that asset seizure was part of the motivation for arresting defendant. The judge noted that Deputy Weaver had already made that point. Furthermore, the judge admonished counsel for misstating the law regarding the seizure and forfeiture of contraband and questioned the relevance of the entire line of questioning proposed by defense counsel. The judge sustained the state’s objection, ruling that the testimony elicited by the defense was irrelevant.
Defendant argues that his accusers had ulterior motives for prosecuting him. As such, the court’s actions prevented the full development of this theory and violated defendant’s right to adequately present his defense under LSA-Const. Art. 1, § 16 (1974).
Our review of the record leads us to conclude that defendant was able to adequately present his defense to the jury. Deputy Weaver candidly discussed the limited motivation for arrest provided by the seizure and forfeiture laws. Defense counsel was also able to elicit testimony on the | umotivational role of these laws during the cross examination of another state-witness, Deputy Luce. Counsel did not adequately demonstrate for the record the relevance of Deputy Weaver’s comments during the tape playback. Accordingly, the trial court did not err when it sustained the state’s objection to questions concerning commentary during a playback of the negotiations recorded during the undercover drug sale.

. This C.I. had been arrested by the task force in Caddo Parish on drug charges and his car had been seized. The C.I. furnished this information to benefit himself.